Michael S. McGlothren and Richard Bounds of Cunningham, Bounds, Byrd, Yance Crowder, Mobile, for appellants.
Thomas M. Galloway, Jr. of Collins, Galloway Smith, Mobile, for appellees.
Drayton N. Hamilton, Montgomery, for amicus curiae Alabama League of Municipalities.
This appeal is from an order granting Defendant City's motion to dismiss for failure to state a claim upon which relief could be granted.
Plaintiffs' residence was connected to and served by the sewer and water systems of the City of Mobile. The elevation of the residence was lower than that of the sewer system; and, because an overflow trap had not been installed in the line leading to the residence, a sewer line back-up overflowed into Plaintiffs' home.
Plaintiffs' claim against the City was based upon the City's alleged negligent failure to inspect or negligent inspection of the lines and the connection between Plaintiffs' residence and the main system. Plaintiffs claim that the duty required of the City's plumbing inspectors — to insure that proper materials are used in residential plumbing lines and connections, that no leaks exist, and that the lines and connections are installed according to the standard plumbing code — was breached when the inspectors: 1) during three preliminary inspections failed to discover the defect of the lack of an overflow trap; and 2) failed to make a final inspection of the lines and connections.
Stated simply, Plaintiffs would have this Court hold: 1) the duty imposed upon the City plumbing inspectors is one which is owed, not to the public generally (as is the case of a public official), but to individual homeowners; and, 2) the breach of such duty will support the homeowner's action for resultant damages. This we cannot do; we affirm the judgment. *Page 386 
Because this is an issue of first impression in Alabama, a summary of the treatment of this area of law in other jurisdictions is appropriate.
The question whether to impose liability upon the municipality for the damages resulting from its agent's negligent inspection, or negligent failure to inspect, has given rise to two distinct lines of decisions. While reaching contrary conclusions, appellate courts of our sister states faced with this issue follow similar paths of reasoning in that all focus upon the nature of the duty of the inspector.
Typical of those cases recognizing the legal duty, and thus imposing liability, upon the city in appropriate cases, is the case of Coffey v. City of Milwaukee, 74 Wis.2d 526,247 N.W.2d 132 (1976). There, the Wisconsin Court stated:
 ". . . A building inspector must be held to have foreseen that his alleged negligence in performing the required inspection might have foreseeably resulted in harm to someone. Furthermore, under the rule of law stated in Restatement, 2 Torts 2d, p. 142, sec. 324A, . . . the building inspector, once he did undertake to inspect the building had a duty to exercise reasonable care in so doing. That duty flowed to the plaintiffs herein.
 "The `public duty' — `special duty' distinction espoused in the cases cited by the City of Milwaukee and LeGrand set up just the type of artificial distinction between `proprietary' and `governmental' functions which this court sought to dispose of in Holytz v. Milwaukee, 17 Wis.2d 26, 115 N.W.2d 618
(1962). Any duty owed to the public generally is a duty owed to individual members of the public." Coffey, 247 N.W.2d at 139.
For other cases reaching similar results, see Adams v. State,555 P.2d 235 (Alaska 1976); and Campbell v. City of Bellevue,85 Wn.2d 1, 530 P.2d 234 (1975).
On the other side of this "duty" issue is Hoffert v. OwatonnaInn Towne Motel, Inc., 293 Minn. 220, 199 N.W.2d 158 (1972), in which the Minnesota Court reasoned:
 "The purpose of a building code is to protect the public. This is well stated in 7 McQuillen, Municipal Corporations (3 ed.) § 24.507, p. 523:
 `. . . The enactment and enforcement of building codes and ordinances constitute a governmental function. The primary purpose of such codes and ordinances is to secure to the municipality as a whole the benefits of a well-ordered municipal government, or, as sometimes expressed, to protect the health and secure the safety of occupants of buildings, and not to protect the personal or property interests of individuals.'
 "Building codes, the issuance of building permits, and building inspections are devices used by municipalities to make sure that construction within the corporate limits of the municipality meets the standards established. As such, they are designed to protect the public and are not meant to be an insurance policy by which the municipality guarantees that each building is built in compliance with the building codes and zoning codes. . . .
 "This court in Roerig v. Houghton, 144 Minn. 231, 235, 175 N.W. 542, 544 (1919), held that a building inspector acts exclusively for the benefit of the public. The act performed is only for public benefit, and an individual who is injured by any alleged negligent performance of the building inspector in issuing the permit does not have a cause of action [cites omitted]." Hoffert, 199 N.W.2d at 160.
For cases which have similarly rejected liability, seeBesserman v. Town of Paradise Valley, Inc., 116 Ariz. 471,569 P.2d 1369 (Ariz.App. 1977); and Georges v. Tudor, 16 Wn. App. 407, 556 P.2d 564 (1976).
From the standpoint of pure logic, we concede that the reasoning of the Wisconsin Court is difficult to refute. There is, indeed, a sense in which the duty of the City's employees, as inspectors, is a duty flowing to the individual homeowners. But to stop here and impose liability is to overlook what we perceive as overriding public policy reasons to hold to the contrary. *Page 387 
These policy considerations may be expressed in terms of the broader requirement of the City to provide for the public health, safety, and general welfare of its citizenry. While, as here, the individual homeowner is affected by the discharge of the City sewer inspector's duty, the City's larger obligation to the whole of its resident population is paramount; and the imposition of liability upon the City, particularly where the Plaintiffs' reliance upon the public inspection is secondary and inferential to their reliance upon the building contractor, necessarily threatens the benefits of such services to the public-at-large.
A municipality, in contrast to the State, which has immunity under Ala. Const. 1901, § 14, is generally chargeable with the negligence of its employees acting within the line and scope of their employment. In Jackson v. City of Florence, 294 Ala. 592,320 So.2d 68 (1975), we interpreted § 11-47-190, Code 1975, as so mandating. We believe these public policy considerations, however, override the general rule and prevent the imposition of a legal duty, the breach of which imposes liability, in those narrow areas of governmental activities essential to the well-being of the governed, where the imposition of liability can be reasonably calculated to materially thwart the City's legitimate efforts to provide such public services.
We readily acknowledge both the difficulty and the risk of error of any attempt to articulate the rule with that degree of definiteness which is easily applicable to varying factual situations. But this phenomenon is no stranger to the Rule of Law generally. We believe the wiser course is to allow the rule to evolve through the judicial process of trial and review on a case by case basis.
We emphasize, however, that only the narrowest of constructions of our instant holding will avoid violence to §11-47-190 and its Jackson interpretation; and that the substantive immunity rule of this case must be given operative effect only in the context of those public service activities of governmental entities (not to be confused with the pre-Jackson distinction between governmental and proprietary functions[1]) so laden with the public interest as to outweigh *Page 388 
the incidental duty to individual citizens. Cf. DeStafney v.University of Alabama, 409 So.2d 1347 (Ala. 1982). For two recent pronouncements of this Court that further illustrate the circumscription of the rule, see, also, City of Birmingham v.Thompson, 404 So.2d 589 (Ala. 1981) (allowing a claim for assault and battery); and Neighbors v. City of Birmingham,384 So.2d 113 (Ala. 1980) (rejecting a claim for malicious prosecution).
We further emphasize that this case neither presents, nor do we decide, the issue whether a city employee would be liable individually for simple negligence in the performance of his duties as a city building and improvements inspector; nor does our holding in DeStafney v. University of Alabama, supra, because of the dissimilar nature of the activities involved, necessarily resolve this issue. Judicial restraint compels us to await a more appropriate case for decision when this issue is presented, briefed, and argued by counsel.
Cognizant of the Restatement's review of the historical development of municipal immunity, and the modern trend of the common law to liberalize its exceptions (Comment, § 895C), which we accept generally, we nonetheless reject theRestatement's approval of a claim against the City under the facts of the instant case.
AFFIRMED.
FAULKNER, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.
MADDOX and ALMON, JJ., concur in the result.
TORBERT, C.J., not sitting.
[1] In its Comment to § 895C (Immunities — Local Government Entities), the Restatement (Second) of Torts, contains these observations:
"b. Nature of local governmental entities
. . . .
 "Because of the private-corporation aspect of its character, a local governmental entity has traditionally been subject to suit, and there has been no problem of finding an express or implied consent to be sued. But the problem of substantive immunity from tort liability has existed from the beginning.
". . .
 "e. Governmental and proprietary functions. The first limitation upon the immunity that developed was that the local government was liable in tort for what it did or omitted to do in its `proprietary' function, as distinguished from its `governmental' function. When it could be found to be acting in its capacity as a corporation, rather than as a government, it had no more immunity than a private corporation. The classification of particular functions as one or the other proved, however, to be so difficult and uncertain, and the subject of so much disagreement that there was little uniformity in the decisions. Continued criticism led to a definite trend in the direction of an extension or expansion of municipal tort liability either by finding that the particular activity that caused the harm should be characterized as proprietary rather than governmental, or by discovering special reasons to take it out of the rule conferring immunity on matters governmental.
 "Other exceptions have developed. A major one is that whenever, in the exercise of a governmental function, a municipality can be found to have created or maintained a nuisance, either public or private, there is no immunity. In many jurisdictions, the existence of liability insurance has been treated as a waiver of governmental immunity, at least to the extent of the insurance coverage. There have been cases holding a local government liable for active wrongdoing as distinguished from nonfeasance and for voluntary activities as distinguished from mandatory ones. Rules eliminating the immunity in certain types of activities, such as the maintenance of streets and sidewalks, have also developed. Courts often exercised considerable ingenuity in finding means of avoiding a traditional rule of immunity, especially when there was insurance involved. The broadening of the number and scope of exceptions suggests that they have been transitional to a position in which the immunity is the exception rather than the rule."