THOMAS, Judge.
Bill Salter Advertising, Inc. (“BSA”), erects and maintains advertising signs in several locations in Alabama, including the City of Atmore (“the city”). In 2004, when Hurricane Ivan struck the city, several of BSA’s signs were damaged. In the months following the hurricane, William O. Salter, the principal owner of BSA, and other representatives of BSA contacted city officials, including Allen Nix, the city’s building official, and Howard Shell, the city’s mayor, regarding rebuilding the damaged signs. According to Salter, the city, through Nix and Mayor Shell, refused to allow BSA to rebuild the signs. Nix and Mayor Shell relied on the city’s sign ordinance, which they interpreted as preventing off-premise signs that were more than 50% destroyed from being rebuilt.
BSA and Salter (sometimes referred to collectively as “the BSA plaintiffs”) sued the city and Nix (sometimes referred to collectively as “the city defendants”) on January 19, 2005. In the initial complaint, the BSA plaintiffs sought a judgment declaring that the city’s sign ordinance did not preclude BSA from rebuilding its signs, an injunction restraining the city from preventing BSA from rebuilding its signs, and damages. The complaint also sought a temporary restraining order, which the trial court denied on March 14, 2005. The BSA plaintiffs later amended the complaint to assert that the city defendants had intentionally interfered with the BSA plaintiffs’ business relationships.
The city defendants moved to dismiss the action in August 2005 on the ground that BSA had failed to exhaust its administrative remedies because it had not appealed the denial of the permits to rebuild the *648 signs to the city’s Board of Adjustment (“the board”). BSA did then perfect its appeal to the board, which, on October 13, 2005, determined that, pursuant to its interpretation of the sign ordinance, BSA could rebuild its off-premise signs provided that they were built in conformity with the size limitations contained in the ordinance.
On November 17, 2006, the city defendants moved for a summary judgment. In the motion, the city defendants argued that collateral estoppel applied to resolve the BSA plaintiffs’ claims because the board had allowed the signs to be rebuilt, and, regarding the intentional-interference-with-business-relations claim, the city argued that it was immune from that claim, see Scott v. City of Mountain Brook, 602 So.2d 893, 895 (Ala.1992) (holding that a municipality was immune from an intentional-interference-with-business-relations claim), and that the BSA plaintiffs could not prove any actions on the part of the city defendants that would amount to a wrongful, malicious, unlawful, and unjustified interference with any of the BSA plaintiffs’ business relationships. The BSA plaintiffs opposed the motion for a summary judgment; in support of their opposition, they presented, among other things, affidavits from Keith Castleberry and Adolph Sutton, two property owners who leased to BSA certain property upon which it built some of its signs. In his affidavit, Castleberry testified that Nix had come to see Castleberry and that Nix had “told me he was coming to me as a person asking me not to rebuild my sign.” Sutton testified that he had personally met with Mayor Shell, and that Mayor Shell had told Sutton that he “was not going to allow the [BSA] signs to be restored.”
The BSA plaintiffs had filed a federal action pertaining to the sign ordinance. Based on the agreement of the parties, on March 22, 2007, the trial court stayed this action pending resolution of the federal action. Once the trial court was notified of the resolution of the federal action, the trial court entered an order on February 19, 2009, setting a status conference for March 24, 2009. The text of the order setting the status conference reads as follows:
“The above-styled matter is hereby reinstated as an active case on this Court’s docket, and this Court hereby sets a status conference in this cause to be held on the 24th day of March, 2009, at 11:00 a.m., at which time attorneys for all parties must attend and be ready to explain their understanding of status of the case, and, if it is to be tried, a proposed time schedule for such.”
Before the status conference, the BSA plaintiffs filed a supplemental brief in support of their opposition to the city defendants’ motion for a summary judgment. Approximately one month later, on March 20, 2009, the city defendants filed a supplemental brief in support of their motion for a summary judgment. In their supplemental brief, the city defendants argued that the BSA plaintiffs had no cause of action for damages against the city defendants; the city defendants specifically distinguished Town of Gulf Shores v. Lamar Advertising of Mobile, Inc., 518 So.2d 1259, 1261 (Ala.1987), in which the supreme court determined that the town’s attempt to enforce its zoning regulations outside its territorial limits could expose it to liability for damages. The city defendants further argued in their supplemental brief that the city could not be liable for an intentional tort like intentional interference with a business relationship and that Nix could not be liable for intentional interference with a business relationship because Castleberry had continued to do *649 business with the BSA plaintiffs. Finally, the city defendants argued that the doctrine of substantive immunity, as outlined in Rich v. City of Mobile, 410 So.2d 385 (Ala.1982), and Hilliard v. City of Huntsville, 585 So.2d 889 (Ala.1991), barred the BSA plaintiffs’ damages claim.
In October 2009, the trial court entered an order noting that it had heard arguments on the summary-judgment motion, presumably at the status conference in March 2009, but indicating that, because significant time had passed and because a new attorney had made an appearance in the case, it desired to hear further argument on the summary-judgment motion. After two continuances, the trial court finally held the hearing on the summary-judgment motion on January 19, 2010. The trial court permitted the parties to file supplemental briefs; the parties did so. The BSA plaintiffs specifically argued in their post-hearing brief that the arguments presented by the city defendants in their March 2009 supplemental brief were untimely asserted under Rule 56(c)(2), Ala. R. Civ. P., and, therefore, could not be considered by the trial court.
The trial court entered a summary judgment in favor of the city defendants on February 10, 2010. The BSA plaintiffs timely appealed to the Alabama Supreme Court, which transferred the appeal to this court, pursuant to Ala.Code 1975, § 12-2-7(6). We affirm the summary judgment in favor of the city defendants.
We review a summary judgment de novo; we apply the same standard as was applied in the trial court. A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing “that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law.” Rule 56(c)(3); see Lee v. City of Gadsden, 592 So.2d 1036, 1038 (Ala.1992). If the movant meets this burden, “the burden then shifts to the nonmovant to rebut the movant’s prima facie showing by ‘substantial evidence.’ ” Lee, 592 So.2d at 1038 (footnote omitted). “[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989); see Ala.Code 1975, § 12-21-12(d). Furthermore, when reviewing a summary judgment, the appellate court must view all the evidence in a light most favorable to the nonmovant and must entertain all reasonable inferences from the evidence that a jury would be entitled to draw. See Nationwide Prop. & Cas. Co. v. DPF Architects, P.C., 792 So.2d 369, 372 (Ala.2000); and Fuqua v. Ingersoll-Rand Co., 591 So.2d 486, 487 (Ala.1991).
We will first address the BSA plaintiffs’ contention that the arguments asserted by the city defendants in their March 2009 supplemental brief in support of the earlier filed summary-judgment motion were untimely asserted under Rule 56(c)(2). The BSA plaintiffs argue that, under Rule 56(c)(2) and the cases construing it, a summary-judgment movant cannot assert a new argument in support of its summary-judgment motion less than 10 days before the hearing on that motion. Because the BSA plaintiffs contend that the March 24, 2009, status conference was also a summary-judgment hearing, the BSA plaintiffs argue that the city defendants’ assertion of new arguments in the March 2009 supplemental brief in support of their summary-judgment motion runs afoul of the 10-day notice requirement. The city defendants, *650 however, argue that the trial court held only a status conference on March 24, 2009, and that the trial court did not set a hearing on the summary-judgment motion until October 2009. Thus, the city defendants argue that the trial court did not violate Rule 56(c)(2) by entertaining the arguments presented in the March 2009 supplemental brief in support of the summary-judgment motion.
Rule 56(c)(2) provides that “[t]he motion for summary judgment, with all supporting materials, including any briefs, shall be served at least ten (10) days before the time fixed for the hearing, except that a court may conduct a hearing on less than ten (10) days’ notice with the consent of the parties concerned.” That rule further provides that, “[sjubject to subpara-graph (f) of this rule, any statement or affidavit in opposition shall be served at least two (2) days prior to the hearing.” Rule 56(c)(2). In Van Knight v. Smoker, 778 So.2d 801, 805 (Ala.2000), our supreme court explained that “[o]ne purpose of the procedural rights to notice and hearing under Rule 56(c) is to allow the nonmoving party the opportunity to discover and to present evidence opposing the motion for summary judgment.” Both our supreme court and this court have routinely reversed summary judgments entered in circumstances revealing a lack of the requisite 10-day notice to the responding party. See, e.g., Moore v. GAB Robins N. Am., Inc., 840 So.2d 882, 884 (Ala.2002); Bank of Brewton, Inc. v. International Fid. Ins. Co., 827 So.2d 747, 755 (Ala.2002); Shaw v. State ex rel. Hayes, 953 So.2d 1247, 1250-51 (Ala.Civ.App.2006); and Dean v. Director, Dep’t of Indus. Relations, 812 So.2d 1263, 1265 (Ala.Civ.App.2001). However, noncompliance with the notice requirement is not alone sufficient for a reversal; the party seeking a reversal of the summary judgment must show that it was prejudiced by the trial court’s action. Peebles v. Mooresville Town Council, 985 So.2d 388, 392 (Ala.2007). To demonstrate that prejudice, “the party need only come forth with any showing that the denial of the full 10-day notice period worked to his prejudice.” Hilliard v. SouthTrust Bank of Alabama, N.A., 581 So.2d 826, 828 (Ala.1991).
Although Rule 56(c)(2) clearly requires that supporting materials be served on a party “at least ten (10) days before the time fixed for the hearing” on the summary-judgment motion, we agree with the city defendants that their March 2009 supplemental brief in support of the long-pending summary-judgment motion was not filed too late to be considered in this particular case. The order setting the status conference for March 24, 2009, did not indicate that the motion for a summary judgment would be entertained by the trial court at that time. Although it appears that the summary-judgment motion was argued at that hearing, the trial court did not rule on the motion after considering the arguments made at that hearing. Instead, on October 5, 2009, the trial court set another hearing at which to entertain arguments on the summary-judgment motion; the trial court set the hearing for November 17, 2009, more than 10 days after the city defendants filed their March 2009 supplemental brief and more than 10 days after the date of the order setting the hearing. After two continuances, the summary-judgment hearing finally took place in January 2010. The BSA plaintiffs had sufficient time in which to marshal any rebuttal to the arguments presented in the city defendants’ supplemental brief. Cf. Giles v. Brookwood Health Servs., Inc., 5 So.3d 533, 556 (Ala.2008) (affirming a summary judgment in favor of a defendant that had not filed a motion for a summary judgment because that defendant’s liability *651 would have been premised solely on re-spondeat superior and the plaintiff had responded to the summary-judgment motion filed by the employees of the defendant and stating that the plaintiff “had sufficient notice and opportunity to fully present all legal arguments and all relevant evidence in opposition to the summary judgment the trial court ultimately entered”).
Even if we agreed that the city defendants’ supplemental brief was untimely because it was filed less than 10 days before the date of the status conference in March 2009, we would still be inclined to conclude that the trial court did not err in considering the arguments presented in that brief. Because the trial court held a later hearing on the summary-judgment motion, the BSA plaintiffs cannot demonstrate that they were prejudiced by the violation of the notice requirement of Rule 56(c)(2). See Peebles, 985 So.2d at 392. The summary-judgment hearing and the ultimate resolution of the motion for a summary judgment came 10 months after the city defendants filed their supplemental brief. This 10-month period permitted the BSA plaintiffs ample time to present opposing arguments, and, if necessary, evidence in opposition, before the trial court considered the arguments advanced by the city defendants in the March 2009 supplemental brief. The BSA plaintiffs’ failure to avail themselves of the opportunity to respond to the arguments advanced in the March 2009 supplemental brief is not sufficient to demonstrate prejudice. Thus, we conclude that the trial court did not err by considering the arguments advanced by the city defendants in the March 2009 supplemental brief in support of their motion for a summary judgment.
We turn next to the merits-based arguments the BSA plaintiffs advance against the summary judgment in favor of the city defendants. The BSA plaintiffs first argue that they were entitled to pursue a claim for damages against the city defendants based on the city defendants’ interpretation of the sign ordinance in such a manner as to preclude BSA from rebuilding its signs based on the holdings of Town of Gulf Shores, 518 So.2d at 1261, and Baldwin County Planning & Zoning Commission v. Montrose Ecor Rouge, L.L.C., 68 So.3d 121, 132 (Ala.Civ.App.2010). Secondly, the BSA plaintiffs argue that the summary judgment in favor of Nix on the BSA plaintiffs’ intentional-interference-with-business-relations claim was improperly entered because, they say, they presented substantial evidence creating a genuine issue of material fact concerning alleged statements made by Nix amounting to interference and because, they say, they presented substantial evidence of damages recoverable for intentional interference with business relations.
 We must first consider whether the trial court’s summary judgment in favor of the city defendants on the BSA plaintiffs’ claim for damages based on the city defendants’ interpretation and enforcement of the sign ordinance so as to preclude BSA from rebuilding its signs was properly entered. As the BSA plaintiffs explain in their brief on appeal, judicial municipal immunity from tort liability was abolished in 1975 by Jackson v. City of Florence, 294 Ala. 592, 320 So.2d 68 (1975). Since that time, municipalities have been subject to liability for the negligent acts of their employees. See Ala. Code 1975, § 11-47-190 (“No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness, or unskillfulness of some agent, officer, or employee of the municipality engaged in work therefor and while *652 acting in the line of his or her duty... .”). However, the doctrine of substantive immunity shields municipalities from liability for the negligent acts of their employees “in those narrow areas of governmental activities essential to the well-being of the governed, where the imposition of liability can be reasonably calculated to materially thwart [a municipality’s] legitimate efforts to provide such services.” Rich, 410 So.2d at 387. The Rich court further explained:
“We emphasize, however, that only the narrowest of constructions of our instant holding will avoid violence to § 11^47-190 and its Jackson interpretation; and that the substantive immunity rule of this case must be given operative effect only in the context of those public service activities of governmental entities ... so laden with the public interest as to outweigh the incidental duty to individual citizens.”
Id. at 387-88. As further explained by our supreme court in Hilliard v. City of Huntsville, 585 So.2d at 891, the lack of anything other than an incidental duty to a particular individual prevents the municipality from being liable for damages, because a breach of a duty owed to the general public will not form the basis for a negligence claim by an individual citizen.
Applying the doctrine of substantive immunity, this court determined that a county commission and a planning commission were entitled to substantive immunity for actions taken in connection with the exercise of their zoning power, including the adoption of a resolution to rezone certain property and the enforcement of that resolution. Payne v. Shelby County Comm’n, 12 So.3d 71, 80 (Ala.Civ.App.2008). The central issue in Payne was whether, after adopting a rezoning resolution pertaining to certain property neighboring the property owned by the plaintiffs, the Paynes, the commissions could be liable for failing to enforce the restrictions contained in the rezoning resolution against the property owner. Payne, 12 So.3d at 80. In reaching our conclusion that the commissions’ actions and decisions were protected by substantive immunity, we determined that “zoning powers are a public-service activity and may not be exercised for the benefit of individual landowners to the exclusion of the interests and well-being of all citizens of a county or municipality,” and, “[t]hus, the exercise of the zoning powers granted to a governmental body is a public-service activity to be exercised for the benefit of the governmental entity and for the well-being of the governed.” Id. at 78. Although we agreed that the rezoning resolution provided an incidental benefit to the Paynes, we determined that the commissions had exercised their power to rezone for the benefit of the county and its citizens; thus, we decided, the rezoning resolution created no duty owed by the commissions specifically to the Paynes. Id. at 79. We concluded, therefore, that the Paynes, because they could establish no duty owed to them by the commissions, could not prevail on their tort claims against the commissions and that the summary judgment in favor of the commissions was properly entered. Id. at 82.
We see little distinction between the commissions who exercised their power to zone in the county in Payne and the city in this case. The city indisputably has the power to zone within its corporate limits. See AIa.Code 1975, § 11-52-70 (granting to municipalities the power to exercise zoning power). In the present case, the city chose to enact a sign ordinance, and the city and Nix, acting in his official capacity, decided that, under their interpretation of the ordinance, BSA could not rebuild its hurricane-damaged signs. The sign ordinance was not enacted to provide a benefit to the BSA plaintiffs. Instead, the ordinance was enacted to benefit the munici *653 pality as a whole. Thus, based on our holding in Payne, we conclude that the BSA plaintiffs failed to establish a duty owed to them by the city or Nix, in his official capacity. Therefore, based on the doctrine of substantive immunity, the summary judgment in favor of the city and Nix in his official capacity on the BSA plaintiffs’ claim for damages arising out of the city defendants’ interpretation and enforcement of the city’s sign ordinance is affirmed.
We reach the same conclusion regarding the summary judgment in favor of Nix individually on the BSA plaintiffs’ claim against him for damages resulting from his interpretation and enforcement of the sign ordinance. We first note that the BSA plaintiffs have not argued in their brief to this court that Nix might be liable individually for negligence based on his interpretation and enforcement of the sign ordinance even if he was not liable in his official capacity. In Rich our supreme court declined to determine whether “a city employee would be liable individually for simple negligence in the performance of his duties.” Rich, 410 So.2d at 388. However, despite the Rich court’s failure to consider whether an individual employee could be held liable for negligence in conjunction with those duties that would give rise to substantive immunity to the municipality, our supreme court later indicated that, in fact, employees participating in a municipal function that gives rise to substantive immunity would share in that immunity. Tutwiler Drug Co. v. City of Birmingham, 418 So.2d 102, 105 (Ala.1982).
“It is readily apparent, then, that liability is imposed upon a municipality pursuant to statute, or upon its employees pursuant to common law, in those cases where there has been some tor-tious conduct resulting in injury or where the agent of the municipality was not involved in one of those activities narrowly construed as being within the range of those services ‘essential to the well-being of the governed.’ ”
Tutwiler Drug Co., 418 So.2d at 105 (emphasis added). We agree that substantive immunity should extend to the municipal employee involved in rendering “those services ‘essential to the well-being of the governed.’ ” Id. We cannot conceive of what duty Nix, individually, would owe the BSA plaintiffs if the city and Nix, in his official capacity, owed the BSA plaintiffs no duty arising from the enactment, interpretation, and enforcement of the sign ordinance, and the BSA plaintiffs have not provided us with any such duty. At least one federal court has reached a similar conclusion regarding the extension of substantive immunity to defendants other than the city itself. See O’Neal Homes, Inc. v. City of Orange Beach, (Civil Action No. 06-0881-CG-B, May 14, 2008) (S.D.Ala.2008) (not reported in F.Supp.2d) (“The cases discussing the doctrine of ‘substantive immunity’ apply the doctrine to municipalities. Although neither party sets forth any argument as to the defendants other than the City of Orange Beach itself, the court finds that the doctrine applies to all of the defendants in this case. There is nothing before the court to show that the city council, the mayor, or the Department of Community Development owed or breached a duty to the plaintiffs to draft legislation with care. See Rich [v. City of Mobile ], 410 So.2d 385 [ (Ala.1982) ] (public officials owe their duty to the public). If there is no duty, there is no negligence.”). Thus, the summary judgment in favor of Nix, individually, on the BSA plaintiffs’ claims for damages arising from the interpretation of and enforcement of the sign ordinance is affirmed.
The BSA plaintiffs also appeal from the summary judgment in favor of *654 Nix on the BSA plaintiffs’ claim of intentional interference with a business relationship.[1] The BSA plaintiffs argue that a genuine issue of material fact exists regarding the statement Nix is alleged to have made to Castleberry, which was to the effect that Nix was personally requesting that Castleberry not permit the BSA plaintiffs to rebuild signs on Castleberry’s property. We agree that the conflict between Castleberry’s affidavit and Nix’s affidavit, in which he denied having made any statement to that effect, creates a factual question regarding whether the alleged statement was made. However, Nix also argued to the trial court that the BSA plaintiffs could not establish any damages flowing from any alleged interference with their business relationship with Castleber-ry. Thus, we will consider whether the BSA plaintiffs presented substantial evidence of those damages that might be recoverable in an intentional-interference-with-business-relations action.
“In Alabama, one who wrongfully interferes with the business relationship of another is subject to liability for ‘(1) the pecuniary loss of the benefits of the ... relation; (2) consequential losses for which the interference is a legal cause; ... (3) emotional distress or actual harm to reputation if either is reasonably to be expected to result from the interference,’ KW Plastics v. United States Can Co., 131 F.Supp.2d 1265, 1268 (M.D.Ala.2001); and (4) punitive damages. Restatement (Second) of Torts § 774A cmt. a (1979). [A plaintiff] need not ‘establish that “but for” the interference [it] would have been awarded [a] contract.’ Utah Foam [Prods., Inc. v. Polytec, Inc.], 584 So.2d [1345,] 1353 [(Ala.1991) ]. ‘The damage resulting from interference can occur regardless of the fact that the [plaintiff] would not have been awarded the contract, and it can also take other forms.’ Id.”
White Sands Group, L.L.C. v. PRS II, LLC, 32 So.3d 5, 17 (Ala.2009).
The BSA plaintiffs argue that they established that they suffered significant financial losses of over $75,000 when BSA was unable to seasonably repair its signs because of the city defendants’ insistence that the sign ordinance barred the repair or rebuilding of those signs. However, those damages resulted not from Nix’s alleged intentional interference with the BSA plaintiffs’ business relationship with Castleberry but instead from the city defendants’ interpretation of the sign ordinance to preclude the repair or rebuilding of the signs. We do not agree that the BSA plaintiffs have demonstrated that the over $75,000 in losses resulted in any way from Nix’s alleged intentional interference with the business relationship between the BSA plaintiffs and Castleberry.
The only other proof of damages relied on by the BSA plaintiffs is based on the statements in Salter’s interrogatory responses regarding damages that Salter intended to personally claim. Salter’s interrogatory responses indicate that Salter sought damages for emotional distress and for damage to his reputation:
“After Hurricane Ivan the City of At-more has treated Mr. Salter as running a less than respectable business. The *655 City of Atmore has discriminated against Mr. Salter as they [sic] have singled out his business, they [sic] have misinterpreted their [sic] sign ordinance and thus has [sic] caused Mr. Salter’s name to appear in the newspaper with negative comments.
“After Bill Salter brought suit against the City of Atmore[,] Mr. Salter has found that his friends and associates of the past 40 years have been unwilling to discuss the sign issue due to pressure from representatives of the City of At-more. Mr. Salter deeply values his personal and business relationships in At-more and feels a great deal of strife over his personal treatment.”
Although emotional-distress and harm-to-reputation damages may properly form the basis of a damages award in an intentional-interference-with-business-relations action, see White Sands Group, 32 So.3d at 17, we are not convinced that Salter’s interrogatory response supports his claim that Nix’s alleged statement to Castleber-ry resulted in the harm to his reputation or the emotional distress that Salter claims to have suffered. Instead, the substance of Salter’s interrogatory response appears to be that the city defendants’ interpretation of the sign ordinance and the concomitant refusal to permit BSA to rebuild or repair its signs caused negative comments to become connected with Salter and resulted in Salter’s friends and associates declining to “discuss the sign issue.” Salter has failed to present substantial evidence demonstrating that he suffered any damage resulting from Nix’s alleged intentional interference with the BSA plaintiffs’ business relationship with Castleberry.
The BSA plaintiffs have failed to present substantial evidence of damages flowing from Nix’s alleged intentional interference with their business relationships. The lack of such evidence is fatal to their intentional-interference-with-business-relations claim. Thus, the trial court properly entered a summary judgment in favor of Nix on that claim.
In conclusion, the trial court did not err when it considered the arguments asserted by the city defendants in their March 2009 supplemental brief in support of their summary-judgment motion. Based on the application of substantive immunity to the exercise and enforcement of zoning power in Payne, the summary judgment in favor of the city and Nix in his official capacity on the BSA plaintiffs’ claim for damages resulting from the interpretation and enforcement of the city’s sign ordinance is affirmed. See Payne, 12 So.3d at 78. Likewise, the summary judgment in favor of Nix in his individual capacity on that same claim is affirmed. See Tutwiler Drug Co., 418 So.2d at 105. Finally, the BSA plaintiffs’ failure to present substantial evidence of damages resulting from Nix’s alleged intentional interference with the BSA plaintiffs’ business relationship with Castleberry requires an affirmance of the summary judgment in favor of Nix on the BSA plaintiffs’ intentional-interference-with-business-relations claim. Accordingly, the summary judgment in favor of the city defendants is affirmed in its entirety.
AFFIRMED.
THOMPSON, P.J., and PITTMAN and MOORE, JJ., concur.
BRYAN, J., dissents, without writing.

. The BSA plaintiffs do not argue that the summary judgment in favor of the city on their intentional-interference-with-business-relationship claim should be reversed, and properly so, because Alabama law is clear— the city cannot be held liable for the intentional torts of its employees. Altmayer v. City of Daphne, 613 So.2d 366, 369 (Ala.1993) (stating that § 11-47-90 “absolves a municipality from liability for the intentional torts of its agents”); see also Scott, 602 So.2d at 895 (holding that a municipality was immune from an intentional-interference-with-business-relations claim).