Rel: May 16, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2024-2025

_____

## SC-2024-0530

_____

## Sylvia Britt

### v.

## City of Hoover

## Appeal from Jefferson Circuit Court
## (CV-22-903003)


MITCHELL, Justice.

AFFIRMED.  NO OPINION.

See Rule 53(a)(1) and (a)(2)(E), Ala. R. App. P.

Stewart, C.J., and Wise, Sellers, and McCool, JJ., concur.

Mitchell, J., concurs specially, with opinion.

MITCHELL, Justice, concurring specially.

I concur with the Court's decision to affirm the judgment, because Rich v. City of Mobile, 410 So. 2d 385 (Ala. 1982), squarely applies. I write separately to outline my view of how our Court should apply Alabama's substantive-immunity doctrine going forward. I also write to present my view of why we do not -- and should not -- overrule Rich.

In the case before us, Sylvia Britt, a resident of the City of Hoover ("the City"), sued the City. Britt suffered flooding on her property after a heavy rainfall, and she alleges that the City is responsible, in part, for the damage that occurred. She sued the City and others in the Jefferson Circuit Court for declaratory and injunctive relief as well as damages. But the trial court entered summary judgment for the City, determining that the substantive-immunity doctrine bars Britt's claims against it. In my view, the common-law doctrine of substantive immunity bars her claims for declaratory and injunctive relief, while § 11-47-190, Ala. Code 1975 ("the immunity statute"), bars her claims for damages.

## Facts and Procedural History

Britt lives in the Green Valley neighborhood of the City. Green Valley lies just south of Patton Chapel Road, which Jefferson County and

3

the Alabama Department of Transportation ("ALDOT") began widening in 2020. The Patton Chapel project, which Jefferson County hired a construction firm to oversee, was designed to expand the road from two to three lanes and add sidewalks. Although the City had no operational involvement in the project, it did contribute 10% of the funds to finance it.

In early 2021, the City hired Schoel Engineering ("Schoel") to investigate the City's drainage system. Schoel produced eight reports covering different neighborhoods, and the City posted those reports on its website in late June. The website clarified that "[t]he conducting of this Study by the City of Hoover does not constitute an acceptance by the City of any responsibility to repair nor does it infer, imply, or otherwise establish any commitment by the City to repair the infrastructure discussed herein and should not be construed as such."

One of Schoel's reports focused on Green Valley's drainage system. That report determined that there is a 100-acre stormwater-drainage area that begins around Patton Chapel Road to the north and flows south to the bottom of the neighborhood, where Britt's house is located on Paulette Drive. The drainage area terminates in Patton Creek to the

4

south of Green Valley and runs under both private property and public roadways.

According to Schoel's report, this drainage area was, as of June 2021, partially blocked by rocks, debris, and a damaged corrugated pipe. The report suggested a number of improvements that could be made, ranging from the minor removal of sediment in drainage channels to the permanent installation of a new pipe. All of the report's suggestions concerned potential improvements that could be made on private property.

A few months after Schoel's reports were posted, a heavy rain caused some flooding in Green Valley. Britt's house, along with those of her neighbors, suffered damage, and a drainage pipe under Paulette Drive collapsed. Green Valley flooded again the following spring, causing further damage.

Britt, along with other homeowners in Green Valley, then sued the City, Jefferson County, and ALDOT. The plaintiffs alleged that the Patton Chapel project had replaced existing soil and vegetation with nonabsorbent pavement and sidewalks. This, in turn, allegedly caused excess stormwater runoff to drain into Green Valley, flooding the

plaintiffs' homes. They further alleged that the City had negligently maintained the drainage system and that, because the system was insufficient for the excess runoff, it had contributed to the flooding. The plaintiffs requested a judgment declaring that the City owed them a duty to maintain the drainage system, an injunction directing the City to maintain that system, and damages for negligence, wantonness, and trespass.

In response, the City moved for summary judgment. In its motion, the City argued that the plaintiffs' claims regarding improper drainage management were barred by the doctrine of substantive immunity. The City further argued that the plaintiffs' claims were barred by the immunity statute.

After a hearing, the trial court granted the City's motion, holding specifically that "the Plaintiffs' claims against the City of Hoover are barred by the doctrine of substantive immunity." Britt timely appealed, though her fellow plaintiffs did not. On appeal, she expressly asks us to overrule Rich v. City of Mobile, 410 So. 2d 385 (Ala. 1982), as being inconsistent with the immunity statute.

Analysis

Britt has asked our Court to revisit the doctrine of substantive immunity and to overrule Rich. But, in my view, the doctrine does not conflict with the immunity statute and reflects well our common-law traditions. As a result, I would decline to abolish it. With the doctrine of substantive immunity in place, Britt's claims for injunctive and declaratory relief fail. On the other hand, I believe that the immunity statute, rather than the substantive-immunity doctrine, bars her claims for damages.

A. The Substantive-Immunity Doctrine

Some form of municipal immunity has existed at common law since at least the late 18th century. See Russell v. Men of Devon, 100 Eng. Rep. 359 (1788); see also Jackson v. City of Florence, 294 Ala. 592, 594, 320 So. 2d 68, 69 (1975). And it has existed in Alabama since at least the mid 19th century. See Dargan v. City of Mobile, 31 Ala. 469 (1858). Throughout the latter half of that century, Alabama courts held that municipalities enjoyed broad immunity in tort for core governmental duties. See Jackson, 294 Ala. at 594, 320 So. 2d at 69. But courts found that municipalities were not immune for "torts committed in the exercise

of their … proprietary capacity" or for "negligent injuries arising out of defects in the streets." Id.; see also Smoot v. City of Wetumpka, 24 Ala. 112 (1854).

It was against this common-law backdrop that the Legislature adopted the immunity statute. That statute, first adopted in 1907, provides that "[n]o city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation." § 11-47-190. But the immunity statute does allow a municipality to be sued when (1) "such injury or wrong" was a result of an employee's "neglect, carelessness, or unskillfulness" while acting in the line of his duty or (2) the injury was a result of the municipality's negligently failing to "remedy some defect in the streets, alleys, public ways, or buildings" when the municipality had notice thereof. Id.

The immunity statute does little to alter the traditional functioning of tort law for damages claims that are allowed under the two exceptions. Instead, it simply allows such claims to proceed as standard common-law claims. And, because the statute says nothing about requests for equitable relief or a declaratory judgment, it does nothing to undo the courts' traditional role when hearing such requests.

8

Part of the courts' traditional role when hearing a tort claim is to determine the scope of the defendant's duties and to whom those duties are owed. See DiBiasi v. Joe Wheeler Elec. Membership Corp., 988 So. 2d 454, 460 (Ala. 2008) (stressing that "'"the existence of a duty is a strictly legal question to be determined by the court"'" (citations omitted)). After all, for a plaintiff to successfully bring a claim in tort, there must first be an underlying duty owed to the plaintiff. Macrum v. Security Tr. & Sav. Co., 221 Ala. 419, 421, 129 So. 74, 76 (1930) (noting that it is "axiomatic that there can be no tort action maintained except against one who owned a duty fixed by law to the plaintiff"). Consequently, for a plaintiff to succeed in suing a municipality either for equitable relief or when one of the immunity statute's exceptions apply, a court must first determine if the municipality owed that plaintiff a duty.

And that is the role our Court played when it announced the substantive-immunity doctrine in Rich. In that case, the plaintiffs asked this Court to hold that "the duty imposed upon the City … inspectors is one which is owed, not to the public generally …, but to individual homeowners." 410 So. 2d at 385. In response, this Court determined that

public-policy considerations "prevent the imposition <u>of a legal duty</u>, the breach of which imposes liability, in those narrow areas of governmental activities essential to the well-being of the governed." <u>Id.</u> at 387 (emphasis added). This rule, the Court stressed, was "given operative effect only in the context of those public service activities of governmental entities … so laden with the public interest as to outweigh the incidental duty to individual citizens." <u>Id.</u> at 387-88. Thus, <u>Rich</u> simply defined the scope of a municipality's duties. In particular, our Court determined that, when serving the general public, a municipality owes a duty to the public as a whole and not to individuals.[1]

This doctrine is in line with common-law principles that, as discussed above, date back at least two centuries. <u>See, e.g.</u>, <u>Mower v. Inhabitants of Leicester</u>, 9 Mass. 247 (1812). Our job, when acting in our common-law capacity, is to reflect and apply those principles because they have long suffused our legal culture. <u>See</u> Stephen E. Sachs, <u>Finding Law</u>, 107 Cal. L. Rev. 527, 536-48 (2019). And we faithfully apply those principles until they either change organically or the Legislature changes

---

[1]Recently, our Court clarified that this rule applies to cases requesting equitable relief as well as damages. <u>Ex parte City of Muscle Shoals</u>, 384 So. 3d 37 (Ala. 2023).

them.  Id. at 544-48; see also Stephen E. Sachs, Originalism as a Theory of Legal Change, 38 Harv. J.L. & Pub. Pol'y 3, 817 (2015).  Because the Legislature, in enacting the immunity statute, preserved the traditional functioning of tort law in suits for injunctive and declaratory relief, and because there is no evidence that our legal principles have changed, I would decline to upset the longstanding doctrine of substantive immunity.  See State v. Grant, 378 So. 3d 576, 581 (Ala. 2022) (stating that "'a statute which is an innovation on the common law will not be extended further than is required by the letter of the statute'" (quoting Pappas v. City of Eufaula, 282 Ala. 242, 244, 210 So. 2d 802, 804 (1968))).

In sum, the substantive-immunity doctrine is a common-law doctrine of tort that applies in cases in which the immunity statute does not: suits proceeding in equity or suits that fit into one of the two statutory exceptions.  Because the substantive-immunity doctrine and the immunity statute have independent fields of operation and do not conflict with each other, I agree with the Court's determination not to overrule Rich or to abolish the doctrine.  I now turn to discussing how I believe that doctrine and the immunity statute apply to the claims at issue in this appeal.

11

B. Britt's Claims for Injunctive and Declaratory Relief

Because the immunity statute does not foreclose injunctive and declaratory relief, I would analyze Britt's claims for such relief under the substantive-immunity doctrine. See § 11-47-190; see also Rich, 410 So. 2d. at 387. As discussed above, that doctrine (1) prohibits the imposition of a legal duty, (2) owed to the individual plaintiff, (3) on a municipality (4) when it is engaged in core governmental duties "essential to the well-being of the governed." Id.

Relevant here, our Court has held that substantive immunity applies to a municipality's policy decisions concerning public services. See, e.g., Ex parte City of Muscle Shoals, 384 So. 3d 37, 41-44 (Ala. 2023); Hilliard v. City of Huntsville, 585 So. 2d 889 (Ala. 1991); Nichols v. Town of Mount Vernon, 504 So. 2d 732 (Ala. 1987); Garrett v. City of Mobile, 481 So. 2d 376 (Ala. 1985); Calogrides v. City of Mobile, 475 So. 2d 560 (Ala. 1985). The Court of Civil Appeals has similarly held that substantive immunity bars a municipality's liability for claims challenging a policy decision or a decision relating to enacting, interpreting, or enforcing a local law. See, e.g., Bill Salter Advertising,

Inc. v. City of Atmore, 79 So. 3d 646 (Ala. Civ. App. 2010); Payne v. Shelby Cnty. Comm'n, 12 So. 3d 81 (Ala. Civ. App. 2008).

In this appeal, Britt challenges the City's decision not to expand and replace the pipes under Green Valley. Municipal decisions regarding drainage systems and stormwater management are classic examples of duties owed to the public at large and not to individual plaintiffs. City of Muscle Shoals, 384 So. 3d at 41-44. Indeed, they are policy decisions regarding the provision of a public service. See Hilliard, 585 So. 2d at 891-92. As a result, the doctrine of substantive immunity prevents the imposition of a duty on the City that is owed to Britt individually. Her claims for injunctive and declaratory relief are therefore barred as a matter of law. As a result, the trial court correctly granted the City's summary-judgment motion on these claims, and I agree that we should affirm this aspect of its ruling.

In my view, this application of the substantive-immunity doctrine to bar Britt's claims is limited. I believe that, in keeping with recent precedent, there is no duty -- owed to individual plaintiffs -- to either affirmatively expand a drainage system or to prevent flooding. See City of Muscle Shoals, 384 So. 3d at 41-44. To hold otherwise would

13

impermissibly transform the City's duty to the general public, which is enforced through democratic politics, into a legal duty owed to individuals, which is enforced by courts. It would also excessively burden the City's "broa[d] requirement … to provide for the public health, safety, and general welfare of its citizenry," thereby limiting its practical ability to do so. Rich, 410 So. 2d at 387. And imposing such a duty here would, in effect, turn the City into an insurer of last resort for flood damage on private property.

I do not believe, however, that we need to disturb any precedent that imposes a duty to individuals when a municipality either causes flooding or negligently designs and constructs a drainage system.[2] See, e.g., City of Muscle Shoals, 384 So. 3d at 44 (discussing Kennedy v. City of Montgomery, 423 So. 2d 187 (Ala. 1982)); Long v. Jefferson Cnty., 623 So. 2d 1130 (Ala. 1993); City of Mobile v. Jackson, 474 So. 2d 644 (Ala. 1985).

In conclusion, because I would not alter or abolish the doctrine of substantive immunity, and because that doctrine applies here, I agree

---

[2]The City did not design or construct the drainage system at issue here, which largely flows underneath private property.

14

that we should decline to impose a legal duty on the City. I would thus affirm the trial court's summary judgment on Britt's claims for injunctive and declaratory relief.

C. Britt's Claims for Damages

I now turn to analyzing Britt's claims for damages. The Legislature, as discussed above, has not altered the ordinary functioning of tort law when a plaintiff seeks injunctive and declaratory relief. But the Legislature has, through the immunity statute, altered the common law in suits for damages. As a result, the statute, rather than the doctrine of substantive immunity, governs the disposition of Britt's claims for damages.

As discussed, the immunity statute bars recovery of damages from a "city or town" unless the injury or wrong was either (1) caused by the negligence of a city employee acting in his line of duty or (2) arose from the City's neglect, upon notice, in remedying "some defect in the streets, alleys, public ways, or buildings." § 11-47-190; see also Ex parte City of Huntsville, 399 So. 3d 1020, 1026 (2024). Britt does not allege that the damage to her property was caused by the negligence of a City employee

acting in his line of duty. Thus, for her claims to succeed, they must fit the second exception.

The second exception to the immunity statute is narrow. It applies only to known defects in the "streets, alleys, public ways, or buildings." § 11-47-190. This language does not reasonably include defects in subterranean drainage systems, parts of which run under private property. Each word in this list refers to public passageways and aboveground structures. And because we interpret words in light of their associates, it would unduly strain the text to extend the exception to an underground, partly private, drainage system. See Winner v. Marion Cnty. Comm'n, 415 So. 2d 1061, 1064 (Ala. 2008); Ex parte Emerald Mountain Expressway Bridge, L.L.C., 856 So. 2d 834, 842-43 (Ala. 2003). After all, such a system, unlike a street, alley, or public way, is not for traveling. Nor is such a system aboveground or available to some segment of the public, as a street, alley, public way, or municipal building would be. While we may determine that the exception fairly embraces defects in a drainage system that are directly connected to a street, such as a street-level drainage grate, I do not believe that the exception applies here. See Ex parte City of Muscle Shoals, 257 So. 3d 850 (Ala. 2018).

16

Because the City's challenged conduct does not fit into either of the immunity statute's narrow exceptions, the City is immune from Britt's claims for damages. I therefore agree that we should affirm the trial court's summary judgment on those claims.

## Conclusion

Because the common-law doctrine of substantive immunity is firmly rooted in our legal tradition and does not conflict with the immunity statute, we should not disturb it. And because this doctrine bars the imposition of a legal duty to either (1) expand a drainage system or (2) generally prevent flooding, I agree that we should affirm the trial court's judgment on Britt's claims for injunctive and declaratory relief. I also agree that we should affirm the trial court's judgment on Britt's claims for damages, which I believe are barred by the immunity statute.