Rel: April 4, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2024-2025

_____

### SC-2024-0526

_____

### Ex parte City of Orange Beach

### PETITION FOR WRIT OF MANDAMUS

### (In re: Sara Pearl Fahrmann, individually and as personal representative of the Estate of Patrick Christopher Fahrmann, deceased

### v.

### City of Orange Beach et al.)

### (Baldwin Circuit Court: CV-21-901218)

McCOOL, Justice.

The City of Orange Beach ("the City") has petitioned this Court for a writ of mandamus directing the Baldwin Circuit Court to grant the City's motion for a summary judgment on the claims filed against it by Sara Pearl Fahrmann.

### Facts and Procedural History

In January 2022, Fahrmann, individually and as the personal representative of the estate of her deceased husband, Patrick Christopher Fahrmann, filed a complaint in which she asserted multiple claims against the City and D.R. Horton, Inc. ("Horton").[1] In her complaint, Fahrmann made the following allegations:

> "12. [Horton] [is] [a] residential construction compan[y] who develop[s] neighborhoods and build[s] individual residential homes for direct sale in Baldwin County, Alabama. [Horton] constructed the home of the Plaintiffs in this action, as well as developed the subdivision [in] which the Plaintiffs' home sits.
>
> "....
>
> "27. The Plaintiffs purchased a home in Cypress Village subdivision, which is located within the municipal jurisdiction of Orange Beach, Alabama. As such, the subdivision required permitting and approval through [the City].

---

[1]Fahrmann also asserted claims against Bethel Engineering, Inc., but those claims are not at issue in this petition.

"28.  Cypress Village subdivision was approved by [the City] in the form of a Planned Unit Development (PUD), that called for a parking pad, per bedroom.

"29.  [Horton] constructed the neighborhood in such a manner where [it] failed to include a parking pad per home.  Therefore, the subdivision was not constructed according to the PUD submitted and approved by [the City].

"30.  [The City] failed to note the variance from the PUD and approved the construction project despite it not being in compliance with the PUD.

"31.  On January 15, 2020, Patrick Christopher Fahrmann had a heart attack.  His spouse, Sara Pearl Fahrmann, called emergency services; however, they were not able to readily reach their home.

"32.  The emergency services were traveling the roads of Cypress Village attempting to reach the Fahrmann home, but were obstructed by construction vehicles, to include a concrete truck and homeowners' vehicles. These vehicles were parked on the road due to a lack of parking at the home sites.  The lack of parking pads resulted from [Horton's] failing to build as prescribed, as well as [the City's] failing to adequately inspect the subdivision and home sites.

"33.  As a result of the obstruction, Patrick Christopher Fahrmann's treatment was delayed, forcing him to be without oxygen for a longer period of time tha[n] would have happened if not for the delay.  This lack of oxygen led to significant medical treatment, expenses, and ultimately his death."

3

Based on those allegations, Fahrmann asserted two separate wrongful-death claims against the City, one alleging wantonness and one alleging negligence.

The City filed a motion for a summary judgment in which it noted that Fahrmann had alleged that it had "fail[ed] to adequately inspect" Horton's construction of the Cypress Village subdivision and had thus failed to ensure that the construction complied with the City's parking requirements. Taking those allegations as true, the City argued that it was entitled to substantive immunity from Fahrmann's claims because, it said, this Court has "time and time again … held that a City's failure to 'adequately inspect' under similar circumstances does not create a legal duty to an individual plaintiff." In support of its motion, the City submitted an affidavit from Adam Roberson, the "Community Development Director and Building Official for the City." In his affidavit, Roberson stated:

> "3. The City has a Zoning Ordinance ('ZO') that applies to all new construction and development in the City. Section 1.02 of the ZO states its purpose: 'The purpose of the City of Orange Beach Zoning Ordinance is to promote and protect the public health, safety, and general welfare of the present and future inhabitants of the City of Orange Beach …. <u>See</u> Ex. 1 (Zoning

4

Ordinance adopted 4-22-91, as amended through 3-17-2020).[2]

"4.  Section 8.01 of the ZO sets out standards for off-street parking.  Section 8.0101(a) requires minimum off-street parking as: 'Single-family dwelling, attached or detached: two (2) spaces for up to two (2) bedrooms; for dwelling units with three (3) or more bedrooms or sleeping rooms, one (1) parking space per bedroom or sleeping room.'  In other words, one parking space for each bedroom.

"5.  While a developer generally must abide by all requirements of the ZO -- including parking requirements -- a developer may apply for a Planned Unit Development, or PUD.  A PUD is 'a special zoning classification that permits flexibility in densities, setbacks, uses, open space and other bulk and area requirements for property that would otherwise be mandated by the Zoning Ordinance and Subdivision Regulations.'  Ex. 1, section 7.01.

"6.  Cypress Village originally was proposed as a condominium development.  Later it was modified to instead include single-family homes on individual lots.  The subdivision was developed in conjunction with a PUD that was approved by the City.

"7.  A PUD may seek variances from certain requirements of the ZO.  But with respect to the parking requirements, the Cypress Village PUD actually included sufficient parking to meet the ZO.  The PUD plans showed sufficient parking spaces, in compliance with the ZO.

_____

    2The exhibits attached to Roberson's affidavit have not been provided to this Court.

"8.   The ZO provides that once a PUD is approved by the City, construction 'shall proceed only in accordance with the plans and specifications approved and in conformity with any conditions attached to the approval.' The City relies on the developer and builder to follow the PUD plan.

"9.   The ZO also provides that the City's Building Official 'shall periodically monitor the construction of the PUD with respect to the start of construction and development phasing.' The Building Official 'shall not issue any permit for any proposed building, structure, activity or use within the project unless such is in accordance with the approved development plan and any conditions imposed in conjunction with its approval.' Thus, the inspections are intended to ensure that construction proceeds in accordance with the City's standards as set forth in the ZO.

"10.  The City periodically inspected construction of the Cypress Village subdivision. However, it was not noted during those inspections that the construction of parking spaces failed to comply with the ZO and approved PUD, i.e., there was not one parking space per bedroom. Through cooperation with the subdivision residents and [Horton], the parking issue ultimately was resolved by the addition of parking spaces for each home in the neighborhood."

The City also submitted an excerpt from Fahrmann's deposition, in which she acknowledged that the basis for her claims against the City was that "an inspector … was … to make sure that … the City … codes were followed" during Horton's construction of the Cypress Village subdivision and that the inspector had failed to do so.

6

In her response to the City's motion, Fahrmann argued that Roberson had "brazenly confessed" that the City had been negligent during its inspections of Horton's construction. Thus, according to Fahrmann, the City was liable for her husband's death because, she said, § 11-47-190, Ala. Code 1975, "recognizes a cause of action against municipalities for negligence." Fahrmann acknowledged that substantive immunity will protect a municipality from liability for its employees' negligence in some instances, but she argued that substantive immunity "is no cut and dry question" and must be decided on a "case by case review," which, she argued, meant that the issue was not properly resolved at the summary-judgment stage. Fahrmann also urged the circuit court not to grant the City's motion because, according to her, substantive immunity "is a judicially created concept" that "was created from thin air" and "has no basis in statute."

On July 27, 2024, the circuit court denied the City's motion for a summary judgment, without stating its reasons, and the City timely petitioned this Court for a writ of mandamus.

Standard of Review

7

A petition for a writ of mandamus is the appropriate avenue by which to seek relief from an order denying a claim of immunity. Ex parte City of Muscle Shoals, 384 So. 3d 37, 40 (Ala. 2023). To prevail on such a petition, the petitioner must show

> "'(1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court. Ex parte Inverness Constr. Co., 775 So. 2d 153, 156 (Ala. 2000).'"

Ex parte Gulf Health Hosps., Inc., 321 So. 3d 629, 632 (Ala. 2020) (quoting Ex parte BOC Grp., Inc., 823 So. 2d 1270, 1272 (Ala. 2001)).

## Discussion

The City argues that it has a clear legal right to a summary judgment in this case because, it says, it is entitled to substantive immunity from Fahrmann's claims. Fahrmann argues in response that substantive immunity does not apply in this case. As a threshold matter, though, Fahrmann reiterates her argument that substantive immunity "has no basis in statute" and that, instead, it "was created [by this Court] from thin air" in Rich v. City of Mobile, 410 So. 2d 385 (Ala. 1982). Answer, p. 19. Fahrmann therefore urges us to take this opportunity to abolish substantive immunity from Alabama law by overruling Rich,

8

which she correctly notes is the case that adopted the doctrine of substantive immunity. We will address that argument first because, if it has merit, there will of course be no need to decide whether substantive immunity applies in this case.

### I. A Brief History of Substantive Immunity

Since 1907, § 11-47-190 and its predecessors have provided municipalities with immunity from claims alleging that their agents, officers, or employees caused injury to any person or corporation,

> "unless such injury or wrong was done or suffered through the neglect, carelessness, or unskillfulness of some agent, officer, or employee of the municipality engaged in work therefor and while acting in the line of his or her duty, or unless the said injury or wrong was done or suffered through the neglect or carelessness or failure to remedy some defect in the streets, alleys, public ways, or buildings after the same had been called to the attention of the council or other governing body or after the same had existed for such an unreasonable length of time as to raise a presumption of knowledge of such defect on the part of the council or other governing body …."

(Emphasis added.) In other words, for more than a century, the Alabama Legislature has provided that "municipalities are generally chargeable with the negligence of their employees acting within the line and scope of their employment," Payne v. Shelby Cnty. Comm'n, 12 So. 3d 71, 77

(Ala. Civ. App. 2008), though they are immune from claims that are not grounded in negligence.

However, in 1982, this Court adopted the doctrine of substantive immunity in Rich, supra -- a doctrine that, despite the plain language of § 11-47-190, provides that municipalities are immune from even some negligence claims. In that case, the plaintiffs' residence was connected to the City of Mobile's sewer system, and, because an overflow trap had not been installed in the sewer line leading to their residence, a backup in the line overflowed into the residence. The plaintiffs sued the City of Mobile, alleging that it had either negligently inspected the sewer lines or had negligently failed to inspect them altogether. The City of Mobile moved to dismiss the complaint for failure to state a claim upon which relief could be granted, and the trial court granted that motion. The plaintiffs then appealed and asked this Court to hold that "1) the duty imposed upon the City plumbing inspectors is one which is owed, not to the public generally (as is the case of a public official), but to individual homeowners; and, 2) the breach of such duty will support the homeowner's action for resultant damages." Rich, 410 So. 2d at 385.

In addressing that question of first impression, this Court began its discussion by noting that other states were divided as to whether a municipality should be held liable for damages resulting from its employee's negligent inspection or negligent failure to inspect. In short, those conflicting decisions had held either (1) that a municipality's duty to inspect is a duty "'exclusively for the benefit of the public'" and therefore, when breached, does <u>not</u> give rise to a cause of action by an individual or (2) that "'[a]ny duty owed to the public generally is a duty owed to individual members of the public'" and therefore, when breached, <u>does</u> give rise to a cause of action by an individual. <u>Rich</u>, 410 So. 2d at 386 (quoting, respectively, <u>Hoffert v. Owatonna Inn Towne Motel, Inc.</u>, 293 Minn. 220, 223, 199 N.W.2d 158, 160 (1972), and <u>Coffey v. City of Milwaukee</u>, 74 Wis. 2d 526, 540, 247 N.W.2d 132, 139 (1976)). With that divide in mind, the Court then stated:

> "There is, indeed, a sense in which the duty of the City's employees, as inspectors, is a duty flowing to the individual homeowners. But to stop here and impose liability is to overlook what we perceive as overriding public policy reasons to hold to the contrary.
>
> "These policy considerations may be expressed in terms of the broader requirement of the City to provide for the public health, safety, and general welfare of its citizenry. While, as here, the individual homeowner is affected by the discharge of

the City sewer inspector's duty, the City's larger obligation to the whole of its resident population is paramount; and the imposition of liability upon the City, particularly where the Plaintiffs' reliance upon the public inspection is secondary and inferential to their reliance upon the building contractor, necessarily threatens the benefits of such services to the public-at-large.

"A municipality, in contrast to the State, which has immunity under Ala. Const. 1901, § 14, is generally chargeable with the negligence of its employees acting within the line and scope of their employment. In Jackson v. City of Florence, 294 Ala. 592, 320 So. 2d 68 (1975), we interpreted § 11-47-190, [Ala.] Code 1975, as so mandating. We believe these public policy considerations, however, override the general rule and prevent the imposition of a legal duty, the breach of which imposes liability, in those narrow areas of governmental activities essential to the well-being of the governed, where the imposition of liability can be reasonably calculated to materially thwart the City's legitimate efforts to provide such public services.

"....

"We emphasize, however, that only the narrowest of constructions of our instant holding will avoid violence to § 11-47-190 and its Jackson interpretation; and that the substantive immunity rule of this case must be given operative effect only in the context of those public service activities of governmental entities … so laden with the public interest as to outweigh the incidental duty to individual citizens."

Rich, 410 So. 3d at 386-87 (emphasis added).

In City of Orange Beach v. Boles, 393 So. 3d 1 (Ala. 2023), the main opinion of this Court, in which three Justices concurred, discussed

12

examples of cases in which substantive immunity had been applied to

shield a municipality from liability for its allegedly negligent inspection:

"In Hilliard v. City of Huntsville, 585 So. 2d 889, 889-90 (Ala. 1991), the plaintiff contended that the City of Huntsville had negligently inspected the wiring in an apartment complex, which later burned, resulting in the death of the plaintiff's wife and two children. In upholding the trial court's judgment in favor of the city, this Court stated:

"'Clearly, the same policy considerations that prevailed in Rich are equally compelling in this case. Although inspections performed by the city's electrical inspectors are designed to protect the public by making sure that municipal standards are met, and although they are essential to the well-being of the governed, the electrical code, fire code, building code, and other ordinances and regulations to which [the plaintiff] refers are not meant to be an insurance policy or a guarantee that each building in the city is in compliance. While [the plaintiff] calls to our attention the inherent danger of electricity, it is precisely because of the dangerous nature of that element that immunity should be granted to a municipality that, although not required by law to do so, chooses to provide for the public health, safety, and general welfare of its citizenry through the regulation of this inherently dangerous element.'

"585 So. 2d at 892.

"A similar holding was reached in Ex parte City of Tuskegee, 295 So. 3d 625 (Ala. 2019) (plurality opinion). In that case, the City of Tuskegee's building code required rental properties to have smoke detectors and to be inspected before

13

utilities could be turned on at the property. 295 So. 3d at 627. The plaintiff contended that the city had failed to properly inspect her mother's residence to ensure that it was equipped with proper fire-detection and fire-alarm systems, which, the plaintiff alleged, led to her mother's death in a fire. 295 So. 3d at 637. The opinion stated: 'As was the case in Hilliard, although individual residents of the City derive a benefit from the inspections, the inspections are designed to protect the public by ensuring that municipal standards are met,' and, thus, the Court determined that the city was entitled to substantive immunity. 295 So. 3d at 641."

City of Orange Beach, 393 So. 3d at 8. Likewise, in City of Orange Beach itself, the main opinion stated that the City was entitled to substantive immunity from claims alleging that it had been "negligent in failing to conduct [building] inspections." Id. at 7.

However, substantive immunity has not been without its critics, even on this Court. In City of Orange Beach, Chief Justice Tom Parker wrote an opinion concurring in the result in which he stated that there was not "any sound jurisprudential distinction between [that] case and [this Court's] prior cases holding that municipalities were immune for negligently failing to properly conduct inspections." 393 So. 3d at 13 (Parker, C.J., concurring in the result). However, Chief Justice Parker went on to state that "[t]he real problem … is that substantive immunity has been mistaken from its beginning." Id. at 14. In short, Chief Justice

Parker argued that § 11-47-190 "contain[s] no exceptions to [a municipality's] liability" for injuries caused by its agents' negligence and is therefore "a categorical determination by the Legislature that municipalities would be liable for the negligent acts of their agents," id.; thus, he argued, "the problem with Rich's substantive-immunity exception is that it was raw public policy, not statutory interpretation." Id. at 17. Having laid that groundwork, Chief Justice Parker offered the following concluding thoughts:

> "As this Court often emphasizes these days, it is not our prerogative to create law out of thin air, including inventing exceptions to statutes when we dislike their results. '"This Court's role is not to displace the legislature by amending statutes to make them express what we think the legislature should have done. Nor is it this Court's role to assume the legislative prerogative to correct defective legislation or amend statutes."' Grimes v. Alfa Mut. Ins. Co., 227 So. 3d 475, 488-89 (Ala. 2017) (citation omitted). This limit is fundamentally embedded in the nature of our judicial power:
>
>> "'Fidelity to ... separation[ ]of[ ]powers ... requires us to determine and adhere to the meaning of the statute's text, even if doing so leads to an inefficient or undesirable result. Therefore, "our inquiry begins with the language of the statute, and if the meaning of the statutory language is plain, our analysis ends there." We must "interpret that language to mean exactly what it says."'

15

"Lang v. Cabela's Wholesale, LLC, 371 So. 3d 228, 234 (Ala. 2022) (citations omitted). This means that we must apply a statute as it is written and leave for the Legislature to decide whether and how it will be rewritten to adapt to any undesirable results. In particular, if the Legislature decides that some kind of municipal immunity is appropriate, it knows how to create it. The Legislature has previously carved out immunity from municipal liability via other statutes. See [Ala. Code 1975,] §§ 4-4-4 (municipal-airport construction and management), 6-5-338 (discretionary functions of peace officers). In the absence of that kind of legislation, this Court has no business creating exceptions to § 11-47-190 based on nothing more than policy judgments."

393 So. 3d at 17-18 (Parker, C.J., concurring in the result). Ultimately, Chief Justice Parker stated that he would not have been willing to overrule Rich at that time because the Court had not been asked to do so, but he "urge[d] this Court to overrule Rich and its progeny at the next opportunity." Id. at 18. As noted, we have now been asked to overrule Rich.

## II. This Court's Standards for Overruling Precedent

When this Court is asked to overrule precedent that was allegedly decided incorrectly, two competing interests come into play. First, this Court has a duty to correct its prior mistakes. See State v. Grant, 378 So. 3d 576 (Ala. 2022) (overruling a prior decision because it conflicted with statutes in the Alabama Criminal Code). However, "[o]verruling

precedent is never a small matter," <u>Kimble v. Marvel Ent., LLC</u>, 576 U.S. 446, 455 (2015), even though that precedent might be clearly wrong. This is due to the second of the competing interests -- the doctrine of stare decisis, which is respect for prior precedent, even prior precedent that was decided incorrectly, so as to provide stability in the law. <u>Id.</u> As the United States Supreme Court has explained:

> "Respecting <u>stare decisis</u> means sticking to some wrong decisions. The doctrine rests on the idea, as Justice Brandeis famously wrote, that it is usually 'more important that the applicable rule of law be settled than that it be settled right.' <u>Burnet v. Coronado Oil & Gas Co.</u>, 285 U.S. 393, 406 (1932) (dissenting opinion). Indeed, <u>stare decisis</u> has consequence only to the extent it sustains incorrect decisions; correct judgments have no need for that principle to prop them up. Accordingly, an argument that we got something wrong -- even a good argument to that effect -- cannot by itself justify scrapping settled precedent."

<u>Kimble</u>, 576 U.S. at 455.

The argument for adhering to the doctrine of stare decisis is particularly strong when we are asked to overrule a prior decision that interpreted a statute or, as is the case here, is allegedly in direct conflict with a statute. <u>Hexcel Decatur, Inc. v. Vickers</u>, 908 So. 2d 237, 241 (Ala. 2005). This increased respect for stare decisis in such cases is because "critics of our ruling can take their objections across the street," i.e., to

the Alabama Legislature, which can "correct any mistake it sees." Kimble, 576 U.S. at 456. Indeed, "the United States Supreme Court has recognized that the doctrine of stare decisis has its greatest potency in matters of statutory interpretation, because [the legislative branch] is always free to supersede judicial interpretation with new legislation." Hexcel Decatur, 908 So. 2d at 241. Plus, the Legislature is presumed to be aware of this Court's decisions, Woodward Iron Co. v. Bradford, 206 Ala. 447, 449, 90 So. 803, 804 (1921), so, if a decision from this Court is inconsistent with a statute, and the Legislature has had ample time to correct us but has taken no steps to do so, then the argument for adhering to the doctrine of stare decisis stands on even firmer ground. See Hexcel Decatur, 908 So. 2d at 241 (adhering to the doctrine of stare decisis when asked to overrule precedent that had interpreted a statute because the Legislature had "had more than 30 years to overrule or modify that decision" and had "chosen not to do so" -- a fact that this Court interpreted as the Legislature's "acquiesce[nce] in the holding").

### III. Whether Rich Should Be Overruled

In arguing that we should overrule Rich, Fahrmann relies on Chief Justice Parker's opinion concurring in the result in City of Orange Beach,

18

supra, to argue that Rich's adoption of substantive immunity constituted "judicial overreach" that is in direct conflict with § 11-47-190. Answer, p. 19. On its face, § 11-47-190 states that a municipality is liable for injuries caused by its agents' negligence, and, as Chief Justice Parker pointed out in City of Orange Beach, the statute provides no exceptions to that liability. Thus, there is certainly an argument to be made that substantive immunity is inconsistent with the plain language of § 11-47-190. Indeed, the Rich Court appears to have believed that its decision might be inconsistent with that statute because it based its decision on public-policy considerations, not statutory interpretation, and it noted that only the narrowest application of substantive immunity would "avoid violence" to § 11-47-190. Rich, 410 So. 2d at 387. However, assuming, without deciding, that Rich conflicts with § 11-47-190, there are strong reasons for leaving substantive immunity in place.

First, there can be little dispute that substantive immunity has become "'"fixed in the fabric of the law,"'" which is a factor to consider when we are asked to overrule precedent. Grant, 378 So. 3d at 583 (quoting Ex parte Capstone Bldg. Corp., 96 So. 3d 77, 89 n.8 (Ala. 2012), quoting in turn 20 Am. Jur. Courts § 131 (2005)). Indeed, Rich was

decided in 1982, which means that substantive immunity has been entrenched in Alabama law for more than 40 years, and it is not as though substantive immunity was adopted in that case and has since lay dormant. To the contrary, during the last 40-plus years, this Court and the Alabama Court of Civil Appeals have been called upon to decide many cases in which substantive immunity was at issue. See, e.g., City of Orange Beach, supra; Ex parte City of Muscle Shoals, supra; Ex parte City of Tuskegee, 295 So. 3d 625 (Ala. 2019); Ex parte Utilities Bd. of Foley, 265 So. 3d 1273 (Ala. 2018); Bill Salter Advert., Inc. v. City of Atmore, 79 So. 3d 646 (Ala. Civ. App. 2010); Payne, supra; Borders v. City of Huntsville, 875 So. 2d 1168 (Ala. 2003); Langley v. City of Saraland, 776 So. 2d 814 (Ala. Civ. App. 1999); City of Mobile v. Sullivan, 667 So. 2d 122 (Ala. Civ. App. 1995); City of Birmingham v. Benson, 631 So. 2d 902 (Ala. 1993); Hilliard v. City of Huntsville, 585 So. 2d 889 (Ala. 1991); Town of Leighton v. Johnson, 540 So. 2d 71 (Ala. Civ. App. 1989); Ziegler v. City of Millbrook, 514 So. 2d 1275 (Ala. 1987); Calogrides v. City of Mobile, 475 So. 2d 560 (Ala. 1985); and City of Mobile v. Jackson, 474 So. 2d 644 (Ala. 1985). Compare Grant, 378 So. 3d at 583 (noting that, although the Court's prior decision had been issued nearly two decades

20

earlier, it had not "become fixed in the fabric of Alabama law" because the rule announced therein was "seldom invoked").

In addition, there are arguably sound public-policy reasons for leaving substantive immunity in place. As this Court pointed out in Rich, imposing liability upon a municipality for its negligent inspections would "materially thwart the [municipality's] legitimate efforts to provide such public services" in the first place. 410 So. 2d at 387. Likewise, in Hilliard, supra, this Court stated:

> "The fact that the law does not mandate that a municipality provide inspections in order to protect the lives and property of its residents tends to increase the probability that the imposition of tort liability in this area would serve only to destroy the municipality's motivation or financial ability to support this important service."

585 So. 2d at 892. In other words, if municipalities are to be held liable for negligently performing inspections that they are under no obligation to perform in the first place, then they will likely simply stop performing the inspections. We acknowledge that public-policy considerations, no matter how sound, would not have justified this Court's decision in Rich to stray from the plain language of § 11-47-190, assuming that it did. However, that ship has sailed, and we must now determine whether to overrule that decision. In making that determination, we believe that

21

public-policy considerations are entitled to some weight. See Dobbs v. Jackson Women's Health Org., 597 U.S. 215, 342 (Kavanaugh, J., concurring) (noting that a court should consider "real-world consequences" when determining whether to overrule precedent).

But the most significant reason for leaving Rich undisturbed is that, in the 43 years since that case was decided, the Alabama Legislature has not taken any steps to abolish substantive immunity from Alabama law, despite the fact that it has since amended § 11-47-190. Thus, it appears that the Legislature has acquiesced in this Court's adoption of substantive immunity; in fact, we presume that it has because, as this Court has previously explained, "where a statute is reenacted without material change, 'it must be assumed that the Legislature was familiar with its interpretation by this [C]ourt and was satisfied therewith.'" Jones v. Conradi, 673 So. 2d 389, 392 (Ala. 1995) (quoting Nolen v. Clark, 238 Ala. 320, 321, 191 So. 342, 343 (1939)). See also Ex parte HealthSouth Corp., 851 So. 2d 33, 42 (Ala. 2002) (noting that, when the Legislature amends a statute and does not do so in a way that affects this Court's precedents, we presume that the Legislature has "adopt[ed] [that] particular judicial construction"); and Hexcel Decatur,

22

908 So. 2d at 241 (refusing to overrule precedent that had interpreted a statute because the Legislature had "had more than 30 years to overrule or modify that decision" and had "chosen not to do so" -- a fact that this Court interpreted as the Legislature's "acquiesce[nce] in the holding").

For the foregoing reasons, we decline Fahrmann's invitation to abolish substantive immunity from Alabama law by overruling Rich. Even if substantive immunity is at odds with the plain language of § 11-47-190, it has been well established in Alabama law for more than four decades, and, during that time, the Alabama Legislature has not taken any steps to abolish it -- a fact we interpret as the Legislature's acquiescence to substantive immunity as a part of Alabama law. Indeed, the fact that the Legislature has had the freedom to abolish substantive immunity for almost half a century and has shown no interest in doing so makes the argument for overruling Rich relatively weak. Rather, at this point (43 years after Rich), if substantive immunity is to be abolished from Alabama law, we leave it to the Legislature to take that step. Having refused to overrule Rich, we must now determine whether substantive immunity applies in this case.

However, before addressing that issue, we first note that the City is immune from Fahrmann's wrongful-death claim that alleges wantonness, not because of substantive immunity, but because of § 11-47-190 itself. In Hilliard, supra, this Court considered whether the City of Huntsville was entitled to a judgment as a matter of law on the plaintiff's claim alleging "negligence and/or wantonness." 585 So. 2d at 890. After holding that substantive immunity barred the plaintiff's negligence claim, the Court stated:

> "With regard to Hilliard's allegation of wantonness, we conclude that the motion for a judgment on the pleadings was due to be granted on grounds unrelated to substantive immunity. Section 11-47-190 limits the liability of municipalities to injuries suffered through 'neglect, carelessness or unskillfulness.' Neighbors v. City of Birmingham, 384 So. 2d 113 (Ala. 1980). To construe this statute to include an action for wanton conduct would expand the language of the statute beyond its plain meaning. For this reason, Hilliard's claim of wantonness was properly dismissed."

585 So. 2d at 892 (emphasis added). In other words, "[t]his Court has construed § 11-47-190 to exclude liability for wanton misconduct." Town of Loxley v. Coleman, 720 So. 2d 907, 909 (Ala. 1998). Thus, we need not engage in a substantive-immunity analysis to hold that the circuit court erred by denying the City's motion for a summary judgment on

24

Fahrmann's wrongful-death claim that alleges wantonness. Rather, the City's immunity from that claim is found in § 11-47-190 itself. Having made that determination, we must now determine whether the City is entitled to substantive immunity from Fahrmann's wrongful-death claim that alleges negligence.[3]

### IV. Substantive Immunity as Applied to This Case

The City argues that it is entitled to substantive immunity from Fahrmann's claim alleging that its inspector negligently inspected Horton's construction of the Cypress Village subdivision because, the City says, this Court "time and time again has held that a City's failure to 'adequately inspect' under similar circumstances does not create a legal duty to an individual plaintiff." Petition, p. 10. In support of that argument, the City cites Payne, supra.

---

[3]We note that, although the City argues that it is entitled to immunity from both of Fahrmann's claims, it does not make any distinction between substantive immunity and the immunity provided by § 11-47-190. However, we also note that this Court ordered Fahrmann to file an answer to the City's petition, and the only argument she has raised therein, other than her argument that Rich should be overruled, is that substantive immunity does not shield the City from its alleged negligence. In fact, Fahrmann does not even mention her wantonness claim, much less make any argument that the City is not immune from it. Thus, Fahrmann does not appear to dispute that the City is entitled to immunity from that claim.

In <u>Payne</u>, the owner of a 9.5-acre tract of land in Shelby County asked the Shelby County Commission and the Shelby County Planning Commission (collectively referred to as "the County") to rezone the land "from an 'E-2 Single Family Estate' to an 'O-1 Office and Institutional District.'" 12 So. 3d at 74. Several homeowners in a subdivision adjacent to the land, including Timothy Payne and Francis Payne, opposed the rezoning request, but the County granted the request subject to certain conditions. Four years later, a developer began clearing the land, though he did not have an approved site plan from the County, and the Paynes and other homeowners in the subdivision complained to the County that the clearing efforts were damaging their properties. After meeting with the Paynes and other homeowners in the subdivision, the developer submitted a revised site plan to the County that purportedly addressed the homeowners' complaints. However, the Paynes continued to oppose the site plan, arguing that it did not comply with the original rezoning conditions. Nevertheless, the County approved the developer's revised site plan, and the Paynes subsequently sued the County, alleging that it had "negligently or wantonly fail[ed] to enforce the rezoning resolution." <u>Id.</u> at 77. The trial court granted the County's motion for a summary

judgment, and the Paynes appealed. The Alabama Court of Civil Appeals affirmed the trial court's judgment and, in support of its decision, stated:

> "[I]t cannot be disputed that zoning powers are a public-service activity and may not be exercised for the benefit of individual landowners to the exclusion of the interests and well-being of all citizens of a county or municipality. Thus, the exercise of the zoning powers granted to a governmental body is a public-service activity to be exercised for the benefit of the governmental entity and for the well-being of the governed.
>
> "Additionally, simply because an individual citizen benefits from a governmental body's exercise of its power does not mean that such power was exercised for that citizen's benefit. For example, in Hilliard v. City of Huntsville, [585 So. 2d 889 (Ala. 1991)], our supreme court held that the City of Huntsville was entitled to substantive immunity with respect to Hilliard's claims of negligent or wanton inspection of wiring at an apartment complex. The court stated:
>
>> "'The city, like most municipalities, elects to perform electrical inspections as a benefit to itself and to the general public. While individuals receive a benefit from these inspections, that benefit is merely incidental to the benefit derived by the citizens in general. Although an individual driver benefits by the state's testing and licensing of drivers of motor vehicles, the state in so testing and licensing drivers does not guarantee to individual drivers that all licensed drivers are safe drivers.'
>
> "Hilliard, 585 So. 2d at 891. As recognized in Hilliard, supra, any benefit received by the Paynes as a result of the [County's] exercise of [its] zoning power was merely incidental to the benefit derived by the citizens of Shelby County in general.

27

"....

"Additionally, the Paynes have not cited, and we have not located, any Alabama cases in which the zoning or conditional rezoning of property was held to create a specific duty owed by a governmental entity to an individual landowner. …

"....

"… Because we conclude that the adoption of the rezoning resolution created no duty to any individual citizen, we conclude that the public duty to be served by the exercise of that power clearly outweighed any incidental duty owed to the Paynes. Accordingly, we conclude that the County … [is] entitled to substantive immunity for actions taken in connection with the exercise of [its] zoning power. See Rich [v. City of Mobile], [410 So. 2d 385 (Ala. 1982)]; and Hilliard, supra.

"The acts taken by the County … to enforce the conditional rezoning resolution at issue in this case are also protected by substantive immunity. A governmental entity's decision regarding how a zoning ordinance should be enforced is as much a legislative matter as is the enactment of a zoning ordinance. See § 11-52-76, Ala. Code 197[5] ('The legislative body of [the] municipality shall provide for the manner in which such [zoning] regulations and restrictions and the boundaries of such districts shall be determined, established and enforced and from time to time amended, supplemented or changed.' (emphasis added)).

"Just as we have located no Alabama case holding that a governmental entity may be held liable in tort for its actions in adopting a zoning ordinance, we have located no Alabama case holding that a governmental entity may be held liable in tort for its failure to enforce local ordinances against third

28

parties. We have, however, found numerous cases refusing to impose liability against a governmental entity for its failure to enforce ordinances and statutes. …

"….

"Courts in other jurisdictions have also reached this same result. In Trianon Park Condominium Ass'n v. City of Hialeah, 468 So. 2d 912, 914-15 (Fla. 1985), the Florida Supreme Court stated:

> "'We hold that there has never been a common law duty to individual citizens for the enforcement of police power functions. Further, we find that no statutory duty for the benefit of individual citizens was created by the city's adoption of the building code, and, therefore, there is no tort liability on the part of the city to the condominium owners for the allegedly negligent exercise of the police power function of enforcing compliance with the building code.'

"See also Maciejko v. Lunenburg Fire Dist. No. 2, 171 Vt. 542, 758 A.2d 811 (2000) (recognizing that plaintiffs had no cause of action against a city fire district arising out of its failure to enforce its ordinances); Geimer v. Chicago Park Dist., 272 Ill. App. 3d 629, 630, 650 N.E.2d 585, 590, 208 Ill. Dec. 891, 896 (1995) (recognizing common-law rule that municipalities are not liable in tort and owe no duty to individual members of the general public for failure to enforce local laws and ordinances); Scheurman v. Department of Transp., 434 Mich. 619, 635, 456 N.W.2d 66, 73 (1990) (recognizing that governmental agencies are not liable for the failure to investigate or enforce ordinance violations); and Berger v. City of University City, 676 S.W.2d 39, 42 (Mo. Ct. App. 1984) (recognizing that a city is not liable for failing to enforce its ordinances)."

12 So. 3d at 78-81 (some emphasis added; footnote omitted). In short, the Court of Civil Appeals concluded that "a governmental entity's <u>failure to investigate or to enforce its own ordinance</u> does not give rise to a tort action."[4] <u>Id.</u> at 81 (emphasis added).

Though factually different, this case is not legally different than <u>Payne</u>. The City has adopted a zoning ordinance that governs parking in residential areas, and it approved a planned unit development ("the PUD") that was intended to govern Horton's construction of the Cypress Village subdivision. Consistent with the City's zoning ordinance, the PUD required Horton to construct the subdivision so as to provide "one parking space for each bedroom," which Horton undisputedly failed to do. The basis of Fahrmann's wrongful-death claim is that the City failed to ensure that Horton's construction of the subdivision complied with the PUD. For its part, the City has admitted via Roberson's affidavit that,

---

[4]The court did not affirm the summary judgment on the Paynes' wantonness claim based on a conclusion that the County was entitled to substantive immunity. Instead, the court affirmed the summary judgment as to that claim because the Paynes had "failed to argue their wantonness claim on appeal." <u>Payne</u>, 12 So. 3d at 82. As we noted above, a municipality does not <u>need</u> substantive immunity from a wantonness claim because the immunity from such a claim is found in § 11-47-190 itself.

although it periodically inspected Horton's construction of the subdivision, it failed to note during those inspections "that the construction of the parking spaces failed to comply with the [zoning ordinance] and approved PUD."

However, as the Court of Civil Appeals made clear in Payne -- a case that has been cited approvingly by this Court -- "a governmental entity's failure … to enforce its own ordinance does not give rise to a tort action." 12 So. 3d. at 81. See also Ex parte City of Muscle Shoals, 384 So. 3d at 44 (relying on Payne in holding that "[t]he City's decisions about its enactment of a plan or its enforcement of existing ordinances … are public-policy decisions made in connection with the City's responsibility to provide for the public's safety, health, and general welfare and fall into the category of actions excepted from the general rule of liability" (emphasis added)). This is so because any benefit the Fahrmanns would have received from the City's proper investigation of Horton's construction of the Cypress Village subdivision would have been "merely incidental to the benefit derived by the citizens of [Baldwin] County in general." Payne, 12 So. 3d at 79. See also City of Orange Beach, 393 So. 3d at 11 ("[A]ny resultant duty to perform the inspections was owed to

the public at large rather than to any individual property owner."). Indeed, Roberson's affidavit indicates that the purpose of the City's zoning ordinance "is to promote and protect … public health, safety, and general welfare," and Fahrmann herself acknowledges that zoning ordinances are "for the general welfare of the public at large." Answer, p. 17. Thus, the City cannot be held liable for its negligent failure to ensure that Horton's construction of the subdivision complied with the parking requirements of the City's zoning ordinance and the PUD. Consequently, the circuit court erred by denying the City's motion for a summary judgment on Fahrmann's wrongful-death claim that alleges negligence.

We acknowledge several arguments that Fahrmann has raised in support of her contention that the City is not entitled to substantive immunity in this case. However, none of those arguments are persuasive.

First, Fahrmann argues that this case is more similar to City of Mobile v. Sullivan, supra, than it is to Payne. In Sullivan, the Court of Civil Appeals held that the City of Mobile was not entitled to substantive immunity from a claim alleging that it had negligently misrepresented to the plaintiffs that a parcel of property they had purchased was zoned

32

for commercial use. This case does not involve a negligent misrepresentation, and the <u>Sullivan</u> court expressly stated that, given the "unique facts" of that case, it was "strictly narrow[ing] [its] holding to [that] case." 667 So. 2d at 127. Thus, <u>Sullivan</u> is not applicable here.

Second, Fahrmann attempts to distinguish <u>Payne</u> by arguing that it "involve[d] the imposition or creation of zoning," whereas her claim stems from the City's failure to ensure that Horton's construction of the Cypress Village subdivision complied with the zoning ordinance and the PUD. Answer, p. 18. <u>Payne</u> did address substantive immunity with respect to a municipality's exercise of its zoning powers; however, it also addressed substantive immunity with respect to a municipality's <u>enforcement</u> of its zoning ordinance, and, as we have already explained, it clearly and expressly stated that substantive immunity protects a municipality from liability for its "failure to investigate or to enforce its own ordinance." 12 So. 3d at 81. Thus, contrary to Fahrmann's contention, <u>Payne</u> controls in this case.

Next, Fahrmann argues that, although "zoning ordinances … may be for the general welfare of the public at large, … a PUD is not." Answer, p. 17. Relying on Roberson's affidavit, Fahrmann notes that a PUD is a

33

"'special zoning classification' that is extended to individual developers"; thus, she argues that the requirements of the PUD were "not for the public at large" but, instead, were limited to "a single neighborhood." Id. However, the fact that the PUD applied to only "a single neighborhood" does not mean that it was not for the "general welfare of the public at large." Indeed, the zoning issue in Payne also affected only a single neighborhood, yet the Court of Civil Appeals still concluded that the County's "exercise of [its] zoning power" was a "benefit derived by the citizens of Shelby County in general." Payne, 12 So. 3d at 79. Likewise, in Hilliard, supra, the plaintiff argued that substantive immunity did not apply "because [the inspection] was of the electrical system in one apartment building" and therefore was not "a duty owed to the public at large" but, instead, "was a duty owed to the individual apartment residents." 585 So. 2d at 891. This Court rejected that argument, holding that the distinction the plaintiff had attempted to draw between his case and cases involving city- or county-wide inspections was "a distinction without a difference." Id. Moreover, Roberson's affidavit indicates that, although a PUD may vary from the City's zoning ordinance, the PUD in this case actually complied with the ordinance, which "applies to all new

34

construction and development in the City." Thus, in this case, the City failed to enforce a zoning ordinance that applies far beyond "a single neighborhood."

Finally, Fahrmann argues that "it simply is not prudent" to dispose of her claim at the summary-judgment stage because "[c]ourts are to navigate [substantive immunity] on a 'case by case basis.'" Answer, p. 14. It is true that the <u>Rich</u> Court held that the boundaries of substantive immunity would "evolve through the judicial process of trial and review on a case by case basis," 410 So. 2d at 387, but that hardly means that a summary judgment is improper in such cases. Indeed, in <u>Payne</u>, <u>supra</u>, the Court of Civil Appeals affirmed the summary judgment that had been issued in the County's favor. Here, the relevant facts are undisputed, and whether those undisputed facts entitle the City to substantive immunity is a question of law that may be properly decided at the summary-judgment stage. See <u>Ex parte City of Muscle Shoals</u>, 257 So. 3d 850, 856 (Ala. 2018) (noting that "the availability of immunity 'is ultimately a question of law to be determined by the court'" (quoting <u>Suttles v. Roy</u>, 75 So. 3d 90, 100 (Ala. 2010))).

Conclusion

35

We decline Fahrmann's invitation to abolish substantive immunity from Alabama law by overruling <u>Rich</u>.  Having decided not to disturb that precedent, we conclude that the City is immune from Fahrmann's wrongful-death claims, either under the plain language of § 11-47-190 (for the wantonness claim) or under the doctrine of substantive immunity (for the negligence claim).  Thus, we grant the City's petition and issue a writ of mandamus directing the circuit court to issue a summary judgment in the City's favor.

PETITION GRANTED; WRIT ISSUED.

Stewart, C.J., and Wise, Sellers, Mendheim, and Cook, JJ., concur.

Mitchell, J., concurs in part and concurs in the result, with opinion.

Shaw and Bryan, JJ., concur in the result.

MITCHELL, Justice (concurring in part and concurring in the result).

I agree that the City of Orange Beach ("the City") is entitled to substantive immunity under Rich v. City of Mobile, 410 So. 2d 385 (Ala. 1982). But I write separately because I believe that Rich is not in conflict with § 11-47-190, Ala. Code 1975 ("the immunity statute"). For that reason, I do not believe the majority's discussion of stare decisis and legislative acquiescence is necessary, and I decline to join it.

Negligence is a creature of the common law. See Turner v. Westhampton Ct., L.L.C., 903 So. 2d 82, 90 (Ala. 2004). By default, then, the elements of a negligence claim are left for courts to determine. Id. And, over time, courts have decided that a plaintiff must establish four elements in order to demonstrate negligence: "1) a duty to a foreseeable plaintiff; 2) a breach of that duty; 3) proximate causation; and 4) damage or injury." Farr Metal, Inc. v. Hines, 738 So. 2d 863, 863 (Ala. 1999). Consequently, for a plaintiff to bring a successful negligence claim, there must first be an underlying duty. And that duty must be owed to the plaintiff. See Graveman v. Wind Drift Owners' Ass'n, 607 So. 2d 199, 203 (Ala. 1992) (observing that the law has long held that "[t]he existence of a duty to the plaintiff is fundamental to a negligence claim"); see also

Macrum v. Security Tr. & Sav. Co., 221 Ala. 419, 421, 129 So. 74, 76 (1930) (noting that it is "axiomatic that there can be no tort action maintained except against one who owned a duty fixed by law to the plaintiff").

It is generally up to common-law courts to define the scope of a duty. See, e.g., DiBiasi v. Joe Wheeler Elec. Membership Corp., 988 So. 2d 454, 460 (Ala. 2008) (stressing that "'"the existence of a duty is a strictly legal question to be determined by the court"'" (citations omitted)). And when doing so, courts consider "'"a number of factors, including public policy, social considerations, and foreseeability."'" Southland Bank v. A & A Drywall Supply Co., 21 So. 3d 1196, 1217 (Ala. 2008) (quoting Armstrong Bus. Servs., Inc. v. AmSouth Bank, 817 So. 2d 665, 679 (Ala. 2001), quoting in turn Smitherman v. McCafferty, 622 So. 2d 322, 324 (Ala. 1993)) (emphasis added).

This was the backdrop against which the Legislature adopted the immunity statute. In its current form, that statute provides municipalities with immunity from claims alleging that their agents, officers, or employees caused injury. § 11-47-190. But there is no statutory immunity if "such injury or wrong was done or suffered through

38

the <u>neglect</u>, carelessness, or unskillfulness of some agent, officer, or employee of the municipality engaged in work therefor and while acting in the line of his or her duty." <u>Id.</u> (emphasis added). In other words, a municipality may still be sued based on its employee's negligence; the immunity statute does nothing to undo the courts' traditional role in defining the common-law duties that municipalities owe.

That was the role our Court played when it announced the substantive-immunity doctrine in <u>Rich</u>. In that case, the plaintiffs had asked this Court to hold that "<u>the duty</u> imposed upon … City … inspectors is one which is owed, not to the public generally …, but to individual homeowners." 410 So. 2d at 385. In response, this Court determined that public-policy considerations "prevent the imposition <u>of a legal duty</u>, the breach of which imposes liability, in those narrow areas of governmental activities essential to the well-being of the governed." <u>Id.</u> at 387. This rule, the Court stressed, was "given operative effect only in the context of those public service activities of governmental entities … so laden with the public interest as to outweigh the incidental duty to individual citizens." <u>Id.</u> at 387-88. <u>Rich</u> therefore simply defined the

scope of a municipality's duties. That is, when serving the general public, a municipality owes a duty to the public as a whole and not to individuals.

Because the immunity statute does not alter the common law in suits against municipalities based on their employees' negligence, nothing in the <u>Rich</u> opinion conflicts with the statute. Indeed, the <u>Rich</u> Court did not even purport to interpret the immunity statute; it instead wielded its common-law power in tort. As a result, I do not believe it is necessary for the majority opinion to discuss stare decisis or legislative acquiescence.